Hat, Judge,
delivered the opinion of the court:
The plaintiff on June 16, 1918, entered into a contract with the United States whereby it agreed to fabricate certain ship materials and to set apart in its plant at Allegheny, near Pittsburgh, sufficient space for the work.
The materials for fabrication and certain plant equipment were to be sujjplied by the United States, the direct labor cost and overhead cost to be paid by the United States, and the plaintiff was to receive $10 for each ton of the materials fabricated.
The contract was terminated on September 29, 1919, in accordance with the provisions of the contract.
The plaintiff is now claiming that the United States is liable to it in the sum of $920,087.81. This aggregate sum is made up of three different items, which, for the sake of convenience, will be considered separately.
*201 The first item is the sum of $742,887.11, which the plaintiff claims for loss at the contract rate of $10 per ton on 74,288,711 tons more material than was fabricated by it. The plaintiff alleges that under the provisions of the contract the United States, was obliged to supply this additional tonnage for fabrication, and that it could have fabricated it if it had been supplied with the material, and therefore that it is entitled to be paid said sum because it alleges that the United States breached the contract, and thereby prevented the plaintiff from earning the aforesaid sum of money.
The contract nowhere provides that the United States shall furnish to the plaintiff any specific amount of ship material for fabrication at any specific time; in fact, the contract is silent on that, and has no provision in it as to when and how the material shall be furnished for fabrication or how njuch thereof shall be furnished. The plaintiff, in the words of the contract, estimates how much of ship material it will fabricate, and then the contract provides that the contractor will not be able to live up to this estimate unless the United States shall supply “ sufficient and regular quantities of material,” but there is no obligation in the contract which binds the United States to supply these quantities of material at any particular time during the- life of the contract. As a matter of fact the United States did supply the plaintiff with materials for fabrication from June 15, 1918, to September 29, 1919, on which last-named date the contract was terminated.
The plaintiff now asks that it be paid the sum of $742,-887.11 for work which it never performed, and this upon the theory that the United States- ought to have supplied it with material enough to enable it to earn this sum. As the United States was not bound by its contract to furnish any specified amount of material and as the plaintiff never performed the work for which it is demanding payment, we are of opinion that this claim of the plaintiff can not be allowed.
As to termination, the contract provided that the contract should continue in force for the period of the war, “and *202 thereafter until receipt of ninety days’ notice by the United States of the cancellation of the operation pursuant to the terms of this paragraph.” The notice was given on July 1, 1919, and the contract terminated on September 29, 1919.
The next claim of the plaintiff is for the sum of $276,-581.68. This claim is for overhead costs accruing after the termination of the contract and before the plaintiff attained normal commercial production and which covers the period from September 29, 1919, to March 1, 1920. That the plaintiff incurred some expense during this period will not be questioned, but the plaintiff when it entered into the contract knew that the contract would be terminated sooner or later and that such expense would be incurred. If the plaintiff desired that such expense should be paid by the United States it should have protected itself by having inserted in the contract some provision which would have protected it. But there is not a word in the contract which can in any way be held to support such a claim. The contract provided for ninety days’ notice of cancellation, which notice was duly given. When the contract was so ended on September 29, 1919, the obligations of the parties ceased and determined. The plaintiff when it entered into the contract must have taken into account the fact that it would incur such an expense and must have been satisfied that the payments made to it by the United States during the life of the contract would repay it for any expense which it might incur after the contract expired and which might be brought about by reason of putting its plant back to the condition which would enable it to do normal commercial business.
The right of the United States to cancel the contract can not be questioned. And if the contract was canceled in the manner provided for in the contract no claim can accrue from damages which might have been suffered after the contract was terminated. The contract fixes the rights of the parties, and we can not go outside of it in determining those rights.
The next claim of the plaintiff is for the sum of $26,821.17, which it claims as overhead costs due it as chargeable to the *203 work of removal of Government equipment and the rein-stallation of its own equipment after the termination of the contract.
The contract provides as follows:
“The owner agrees to pay the cost of direct labor, as herein defined, of moving and storing the machinery of the contractor necessary to be removed and stored for the purpose of creating the fabricating capacity called for herein, in order to make room for the necessary fabricating machinery, as well as the cost of relocating and reinstalling the present machinery units of the contractor at the conclusion of operations under this contract, as well as the cost of the installation of the new machinery provided for herein, as well as the cost of castors and other roller punch tables, swing cranes for punches, floor plate handling apparatus, air hoists, etc., the cost of all of which shall not exceed the sum of one hundred and fifty thousand dollars ($150,000.00).”
There is here not a word which could be held to mean that the United States is liable for overhead costs. The plaintiff admits that it was paid the direct labor costs, but construes the word “ costs ” in the last half of the paragraph to include overhead costs. We do not think that it can be held to have such a construction. The paragraph is dealing with a specific subject, which does not pertain to the general subject matter of the contract, and if overhead was contemplated by the parties it would have been provided for in plain words; especially is this so when we consider that the contract fully provides for overhead during the life of the contract and defines how overhead charges shall be made up. The contract failing to provide for overhead costs, we can not go outside of the provisions of the contract and theorize such charges into the contract.
We come now to consider the counterclaim of the defendant, the first item of which is the sum of $133,878.94 for machinery purchased by the plaintiff from the United States. The plaintiff admits its indebtedness as to this amount.
The next item of the counterclaim is for the overpayment to the plaintiff of overhead costs. The defendant contends that the plaintiff should only receive the actual overhead •cost per month during the whole period of the contract.
*204 provides that for the first year of operation under the contract it is estimated that the overhead charge shall be about $100,000 per month, and it was agreed that the correct amount to cover these charges for the first year should be arrived at by an examination of the books of the contractor. This was to have been done within 30 days of the date of the contract. On December 31, 1918, the plaintiff and a representative of the United States authorized to act, determined that during the first year of the life of the contract the overhead allowance was to be the sum of $118,000 per month. Under these facts we are of opinion that the plaintiff during the first year of the contract was entitled to receive monthly the sum of $118,000. The contract also provided as follows: “After the first year the exact and proper amount fixed for overhead charges shall be paid without regard to the estimated overhead charges named herein.” It follows that any payments made after the first year of the contract which were in excess of the actual overhead costs were made in violation of the terms of the contract, and the plaintiff must repay them. We find the excess payments to have been the sum of $232,687.86.
The defendant is entitled to a judgment in the sum of $358,090.01. It is so ordered.
Graham, Judge; Downey, Judge; Booth, Judge; and Campbell, GMef Justice, concur.